IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,  )  <br>  ) <br> Plaintiff,  ) <br>  ) <br> vs.  ) <br>  ) <br> GERALD JACKSON,  ) <br>  ) <br> Defendant.  ) | Case No. 8:05CR54 <br><br> REPORT AND RECOMMENDATION |

This case is before the court on the Motion (#15) of the defendant, Gerald Jackson, to dismiss the indictment (#1) against him on the grounds that his pre-indictment Sixth Amendment right to speedy trial has been violated.[1]  Jackson is charged with the use of a computer to entice a minor to have sexual contact in violation of Nebraska statutes and, therefore, in violation of 18 U.S.C. § 2422(b).  The charge carries a maximum penalty of fifteen years imprisonment, a fine of not more than $250,000, or both such fine and imprisonment, three years of supervised release, and a $100 special assessment.

The government denies Jackson's Sixth Amendment rights were violated by pre-indictment delays because (a) he had no right to indictment soon or shortly after his case is received by the United States Attorney's Office, (b) his Sixth Amendment right to a speedy trial applies only to post-indictment delays,  and (c) he has failed to show he suffered prejudice.

---

[1] The defendant, at the hearing on the motion, waived his claim to a Fifth Amendment violation of his right to speedy trial (2:16-3:19).

Hearing was held May 25, 2005 and, while no live testimony was received, the court received by stipulation the following exhibits:

1) The stipulated testimony of attorney Richard Epstein (Ex. 1);

2) Stipulation dealing with the arrest and charge of the defendant in Douglas County in August of 2001, based upon the same operative facts on which the federal indictment was later returned (Ex. 2);

3) The stipulated testimony of Dave Margritz, United States Postal Inspector (Ex. 3);

4) The stipulated testimony of Robert F. Kokrda, former Assistant United States Attorney, now retired (Ex. 4);

5) The stipulated testimony of Scott Haugaard of the Nebraska State Patrol (Ex. 5); and

6) A time line prepared by the defense as demonstrative evidence to aid the court (Ex. 6).

At the conclusion of the hearing, the court took the motion under advisement. On June 3, 2005 the transcript of the hearing (#26) was filed and the motion was deemed submitted.

## FINDINGS OF FACT

The evidence supports the following time line:

**Between July 2001 and August 14, 2001**. The Nebraska State Patrol, United States Postal Inspection Service, Federal Bureau of Investigation, and the Douglas County Sheriff's Office conducted an on-line enticement investigation, during which Jackson was allegedly involved in sexually suggestive on-line chats with investigator David Margritz of the Postal Inspection Service, while Margritz posed as a fourteen-year old girl.

**August 14, 2001.**  Jackson traveled to Kingswood Park in Omaha for an allegedly prearranged meeting with the person he thought was a fourteen-year old girl.  Although Jackson traveled to the park, he did not stop.  Later that day Jackson was arrested and interviewed by members of the Nebraska State Patrol (Ex. 5).  Jackson spent one night in the Douglas County jail (Ex. 2), and the FBI took custody of his computer.

**August 15, 2001.**  Jackson was charged with conspiracy to commit sexual assault in Douglas County state court  (Ex. 5).

**February 11, 2002**.  The Douglas County state charge was dismissed, along with a number of other on-line enticement cases based on concerns that under Nebraska state law a defendant cannot conspire with a law enforcement agent acting in an undercover capacity (Ex. 5, ¶ 3).

**April 25, 2002**.  Richard Epstein, the attorney who represented Jackson in the state case, contacted Douglas County Deputy Christiansen about the return of Jackson's computer.  He was told the FBI was keeping the computer for possible federal prosecution (Ex. 1, ¶ 2).

**April 29, 2002**.  Epstein told Jackson about the April 25, 2002 conversation and informed him the case would be presented to the United States Attorney for consideration of charges (Ex. 1, ¶ 3).

**November 3, 2002**.  Jackson's case was presented to the United States Attorney's Office (Ex. 5, ¶ 5) and assigned for investigation to Robert F. Kokrda, former Assistant United States Attorney for the District of Nebraska, now retired (Ex. 4, ¶ 1).  This was

Kokrda's first on-line enticement case and although he was generally unfamiliar with the statutes and case law, he was concerned about a possible entrapment defense. He expressed this concern to Investigator Margritz and requested a meeting, however, he does not recall whether a meeting took place as Margritz was transferred to Washington (Ex. 4, ¶ 3).

**October 1, 2004**. Kokrda accepted early retirement from the Department of Justice. Between February and late September 2004 he prepared for retirement by wrapping up several cases, including several months of preparation for an armed career-criminal trial. Kokrda noted that he considered this case a "low priority" (Ex. 4, ¶ 5).

**September 28, 2004.** The case was reassigned to Assistant U.S. Attorney Mike Norris.

**February 24, 2005**. Jackson was indicted (# 1).

**April 15, 2005**. Jackson filed his motion to dismiss for lack of speedy trial (#15).

## LEGAL ANALYSIS

The charge in this case is fairly straightforward and did not involve a complicated investigation. The record in this case is devoid of any satisfactory explanation of the delay in seeking the indictment.

Jackson asserts that he has been denied his Sixth Amendment pre-indictment right to a speedy trial. In *Barker v. Wingo*, 407 U.S. 514 (1972), the Supreme Court established a

four part test to determine whether an accused has been denied the constitutional right to a speedy trial.

First, inquiry must be made as to whether the delay was uncommonly long. In this case, the over 27-month delay between the case being presented to the United States Attorney (November 3, 2002) and indictment (February 24, 2005), is uncommonly long even without consideration of the delay of almost 15 months from the defendant's arrest on state charges (August 15, 2001) to the date the case was presented to the United States Attorney (November 3, 2002)[2]. A delay of over 27 months is clearly uncommonly long.

Second, inquiry must be made into who is more responsible for the delay, the government or Jackson. In this case, the responsibility for the delay lies entirely with the government.[3] Jackson was informed on April 29, 2002 that he might be indicted. He did nothing to hide his whereabouts, he continued to live openly. The government's negligent delay in indicting Jackson cannot in any way be charged to Jackson.

Third, an inquiry must be made as to whether Jackson asserted his right to a speedy trial in due course. Jackson filed this motion asserting lack of a speedy trial within two weeks of his arraignment, and there is no evidence he had knowledge of the Indictment prior

---

[2] While Jackson would add the two time periods for a total delay of approximately 32 months, the record does not support a finding that the United States of America had any part in the 15-month delay which occurred while the case was prosecuted by the State of Nebraska.

[3] The government admitted during the hearing that Jackson had "clean hands" regarding any delay (22:9-12).

-5-

to his arrest. Jackson asserted his right to a speedy trial in due course at his earliest opportunity.

Fourth, inquiry must be made as to whether Jackson suffered prejudice by the delay. In evaluating prejudice, the Supreme Court "has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Barker*, 407 U.S. at 532. While the physical evidence and witnesses in this case may still be available, it is clear that Jackson's knowledge that the FBI had his computer and that the United States Attorney was considering charges, would result in added angst and anxiety. Also, prejudice may be presumed if not persuasively rebutted. *Barker*, 407 U.S. at 534. As the court stated in *Doggett v. United States*, 505 U.S. 647, 657 (1992),

> Although negligence is obviously to be weighed more lightly than a deliberate intent to harm the accused's defense, it still falls on the wrong side of the divide between acceptable and unacceptable reasons for delaying a criminal prosecution once it has begun. And such is the nature of the prejudice presumed that the weight we assign to official negligence compounds over time as the presumption of evidentiary prejudice grows. Thus, our toleration of such negligence varies inversely with its protractedness, *cf. Arizona v. Youngblood,* 488 U.S. 51 (1988), and its consequent threat to the fairness of the accused's trial. Condoning prolonged and unjustifiable delays in prosecution would both penalize many defendants for the state's fault and simply encourage the government to gamble with the interests of criminal suspects assigned a low prosecutorial priority. The Government, indeed, can hardly complain too loudly, for persistent neglect in concluding a criminal prosecution indicates an uncommonly feeble interest in bringing an accused to justice; . . . .

(Parallel citations omitted).

The record in this case contains evidence of both actual and presumptive prejudice.

Based on the government's negligence, which resulted in a delay of more than 27 months between review of the case for possible prosecution and indictment, the court finds Jackson's Sixth Amendment rights have been violated. All of the factors of *Barker* weigh in Jackson's favor and his motion to dismiss should be granted.

**IT IS RECOMMENDED** to Chief Judge Joseph F. Bataillon that Jackson's motion to dismiss (#15) be granted.

Pursuant to NECrimR 57.3, a party may object to this Report and Recommendation by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten (10) calendar days after being served with the recommendation. The statement of objection shall specify those portions of the recommendation to which the party objects and the basis of the objection. The objecting party shall file contemporaneously with the statement of objection a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed de novo and a different disposition made.

**DATED June 10, 2005.**

                        **BY THE COURT:**

                        **s/ F.A. Gossett**
                        **United States Magistrate Judge**