IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | 8:05CR54 |
| Plaintiff, ) | |
| ) | AMENDED |
| v. ) | MEMORANDUM AND ORDER |
| ) | |
| GERALD JACKSON, ) | |
| ) | |
| Defendant. ) | |
| ) | |

This matter is before the court on defendant Gerald Jackson's motion in limine, Filing No. 57, and oral motion to dismiss, Filing No. 73. The court conducted evidentiary hearings in connection with these motions on October 3, 2006; October 19, 2006; and December 1, 2006. The court permitted additional briefing until January 19, 2007.

**Background**

Briefly, the Federal Bureau of Investigation and the Douglas County Sheriff's Office participated in an investigation involving the defendant which centered around online chats during the summer of 2001. An agent of the Postal Investigation Service, David Margritz (Margritz), known as "k8tee4fun," identified himself to defendant as a fourteen-year-old girl. The officers set up a meeting with the defendant. After a number of conversations with law enforcement, defendant drove to a park, apparently with his daughter, but instead of stopping, he returned home. Officers then went to defendant's home, arrested him, and seized his computers. He was thereafter charged in state court with conspiracy to commit sexual assault. These charges were dismissed by the state on February 11, 2002, because Nebraska law does not permit a conspiracy charge between a defendant and an undercover government agent. On November 3, 2003, the United States Attorney's Office

received this case.  Assistant United States Attorney Robert Kokrda was first assigned to handle the case on November 3, 2002, but he did not do anything on it prior to his retirement on October 1, 2004.  On September 28, 2004, Assistant United States Attorney Michael Norris was assigned to handle the case.  On February 24, 2005, a grand jury indicted defendant for using a computer to knowingly attempt to persuade, induce, and entice a minor to engage in sexual activity in violation of 18 U.S.C. § 2422(b).  Jackson filed a motion to dismiss alleging that the pre-indictment delay violated his Fifth and Sixth Amendment rights.  The magistrate recommended that the indictment be dismissed on Sixth Amendment grounds.  This court agreed with the result of the magistrate's report and recommendation but dismissed the case on Fifth Amendment grounds.  The government appealed.

The Eighth Circuit agreed that the Fifth Amendment[1] plays a role in "protecting against oppressive delay." *United States v. Jackson*, 446 F.3d 847, 849  (8th Cir. 2006*); United States v. Brockman*, 183 F.3d 891, 895 (8th Cir. 1999) (citation omitted).  Absent a statute of limitations issue, said the court, the burden for showing a due process violation is great for a defendant.  *Id*.  A defendant must first show:  (1) the delay caused actual and substantial prejudice to his defense; and (2) the government intentionally delayed the indictment to permit either a tactical advantage or harassment.  *Jackson*, 446 F.3d at 849.  The court in *Jackson* noted, "'when the Government has been responsible for delay resulting in loss of evidence to the accused, we have recognized a constitutional violation only when loss of the evidence prejudiced the defense.'"  *Id*. at 851 *(citing United States v.*

---

[1] The Eighth Circuit determined that the Sixth Amendment is not implicated in pre-indictment delay cases.

2

*Valenzuela-Bernal*, 458 U.S. 858, 868 (1982)).[2] The Eighth Circuit then determined that defendant Jackson failed to show actual prejudice, such as lost documents or witnesses or lost documents not available from other sources. The court found that defendant's "speculative claims about possible lost computer files and possibly weakened memories of witnesses are not sufficient to meet the requirement of actual and substantial prejudice established by our prior Fifth Amendment cases." *Jackson*, 446 F.3d at 852.[3]

Following remand, the defendant filed a motion in limine to exclude evidence and an oral motion to dismiss the indictment.

**Discussion**

*a. The Testimony*

---

[2]The Eighth Circuit, though, points out that *Valenzuela-Bernal* did not involve pre-indictment delay but involved prejudice because of loss of witnesses.

[3]The court notes for the record that the Eighth Circuit received argument in this regard from the United States Attorney that has turned out to be inaccurate. The government represented the following to the Eighth Circuit at oral argument:

> Again, it's an online enticement case. So what the evidence is going to be are the chats between the postal inspector posing as a fourteen-year old, and the defendant, so everything that is being said was being typed down, typed out. Everything that has been typed out has been maintained and recorded and will be evidence with regard to this. So there isn't a whole lot of memory that is going to go with what happened here, because it's going to be part of the evidence itself as far as the communications and exchanges that occurred between the two parties. So, therefore, there is no loss of memory. It's just speculation and conjecture as to how that could affect anything. But my speculation would be it can't affect it at all, because it is all written down, it's part of the exhibits, it's part of the discovery. And so, therefore, the conversations themselves are evidence and the conversations themselves, just as if they had been recorded on a wiretap, are actually going to be before the court and the jury with regard to the exhibits, the actual transcribed conversations.

Eighth Circuit oral argument, *United States v. Jackson*, supra. The only exhibits in the case are the cut-and-paste word documents created by Officer Margritz. In addition, there was a recorded telephone conversation, and that audiotape has been misplaced (referring to Filing No. 65, page 13 of cut-and-paste document where the parties discussed a phone conversation). The phone conversation was apparently taped. Also, during the December 1, 2006, hearing before this court, counsel for the government indicated to the court that defendant's computer had been found. The government and defendant now agree that defendant's computer has been found by the Nebraska State patrol, but apparently the chats at issue were not archived on the computer.

In his current motion in limine, defendant seeks an order prohibiting the government from introducing the cut-and-paste document[4] of alleged online chat conversations between "gnesta18" and "k8tee4fun" into evidence at trial. Defendant also renews his motion to dismiss the indictment for lack of a speedy trial.

The evidence at issue involves certain "instant message" or "chat" conversations conducted via computer between Margritz, posing as fourteen-year-old girl with the screen name k8tee4fun, and the defendant, using the screen name gnesta18. The conversations occurred between July 17, 2001, and August 14, 2001. The parties agree that there are no original transcripts of the conversations, either because computers are missing or because instant-message conversations were not maintained or archived on the computers. The parties also agree that there are no longer original electronic computer printouts or copies on floppy discs or hard drives or disc drives capturing the computer conversations between Margritz and the defendant during that period of time. None of the conversations were saved. It appears from the testimony of Margritz that he wiped his computer clean during a routine upgrade a couple of years after this investigation. Consequently, the government is attempting to introduce copy-and-paste notes taken by Margritz from the online chats and saved into a Microsoft Word document. Defendant objects to the admissibility of this evidence.

Margritz testified he conducted the online sting operation that resulted in the arrest of Jackson. He further testified that, at the end of each chat session, he saved the conversations between k8tee4fun and gnesta18 by clicking and dragging to highlight the

---

[4]Margritz refers to this as the cut-and-paste method, and accordingly, since this is not an "actual transcript," the court will refer throughout this memorandum and order to the cut-and-paste document.

complete conversation from start to finish.  Filing No. 71 at 11, 18.  He then copied and pasted the entire selection into a word processing document in Microsoft Word.  *Id.*  He testified that he saved each conversation chronologically in an ongoing log. Filing No. 71, 12:1-2; 18:14-16.  He further testified that  immediately after he copied and pasted the conversations into Word, he made another copy for himself and added certain notes and edits to that copy.  Filing Nos. 71, 73-74, 77-78.  He acknowledged that it was possible to leave out words if they were not properly highlighted and dragged, but stated that there was no human error in this case because he took "great pains" to look back at the screen and make sure he captured everything accurately before closing the chat window.  *Id.* at 12-14, 21-22.  He further testified that he never modified the document in any way.  *Id.* at 12:9-13.  He testified that he never relied on the archives of Yahoo, apparently because it was unavailable or he had been told it was not reliable.

      Kevin H. Peden, a computer forensics expert, also testified at the hearing.  He stated that he had seventeen years of law enforcement, had background experience investigating crimes involving children, and he had a computer engineering degree from Spokane Community College.  He received training at the computer forensic boot camp, and he attended the NTI school of forensics.  He has a computer certificate from Oregon State.  He testified that he has conducted over 100 investigations and worked on fifteen child pornography cases.  He testified that he always produced a bit-stream image of the hard drive, which was the forensic copy of the hard drive and is the best way to confirm the chat.  Peden testified that the bit stream image would be the only way to see the evidence exactly as it appeared during the conversations. According to Peden, other ways to accurately save computer chats would include a screen capture where a log file is saved

to the hard drive, found in unallocated space, or use of the ypager log found in Yahoo. He also testified that there were third-party software programs available in 2001 that would accurately save the online chats, and the basic "print screen" and "file-print" options would likewise have captured the entire chat. Peden testified that the cut-and-paste method employed by Margritz was the least effective way to capture the chat log. Filing No. 72, 19:4-12.

Defendant offers the following defense in this case. Defendant contends that he wanted to be friends with the online fourteen-year-old girl and intended to introduce his teenaged grandniece to k8tee4fun, and that such a conversation occurred between him and Margritz. He alleges that either the chat log or the missing audiotape of the conversation referred to in the chat log would contain a conversation he had with Margritz. There is no such conversation in the government's cut-and-paste document, and the audiotape is missing.

Peden testified at great length regarding the multiple errors that he believes exists in the cut-and-paste version of the exhibit offered by Margritz. He testified that the errors were numerous, and he attributed them to operator errors. See, e.g., Filing No. 72, 31:6-12; 34:11-16. Peden testified that there are numerous missing offline messages. Filing No. 72, 28:5-13; 29:14-31:5; 37:11-15; 43:6-14; 37:4-39:25; 30:6-15; 29:14-30:2; 21:4-19; 35:17-23 (selective cut and paste where line 11 separated from line 10); 35:5-7 (selective cut and pasting); 41:25-42:3 (missing data); 42:4-8; 47:6-8 (selective cut and paste); 30:23-31:5; 33:11-17; 33:24-34:10 (four-minute gap in conversation); 33:7 (data missing); 32:7-18, 32:24-33:4, 32:20-23 (time sequence errors); 26:21-27:22 (computer cannot put items once in ascending order and then later change it to descending order without operator

6

assistance); 36:8-37:3 (timing of message impossible); Filing No. 71, 40:19-41:10; 54:21-24. Margritz admits that not all of the offline messages appear in the cut-and-paste document. Filing No. 71, 49:12-13; 51:8-9; 51:8-21; 51:22-24. Margritz also admitted he had errors in his cutting and pasting. Filing No. 71, 40:19-41:10; 53:6-25. In addition, it is undisputed that Margritz has added his editorial information. Filing No. 71, 31:20-32:2. He also admitted that he edited pages to include the times and dates of conversations. Filing No. 71, 38:21-39:3; 50:9-21; 52:5-12.

### b. Admissibility of the cut-and-paste document

The court finds the cut-and-paste document is not admissible at trial. First, the burden is on the government to show the document is authentic. *United States v. Black,* 767 F.2d 1334, 1342 (8th Cir. 1985); Fed. R. Evid. 901(a); *United States v. Tank*, 200 F.3d 627, 630 (9th Cir. 2000). The government must make a foundational showing that the transcript is trustworthy. *United States v. Webster*, 84 F.3d 1056, 1064 (8th Cir. 1996) (with regard to recording). The government attempts to introduce the editorialized version of the cut-and-paste document. However, the court finds the evidence offered by Peden is credible and supportable. Peden testified about a number of methods that could have been utilized to accurately capture the chats, but none of these methods were used. As set forth above, there are numerous examples of missing data, timing sequences that do not make sense, and editorial information. The court finds that this document does not accurately represent the entire conversations that took place between the defendant and Margritz. The defendant argues that his intent when agreeing to the meeting was to introduce his grandniece to the fourteen-year-old girl. Defendant is entitled to defend on this basis, as it goes to the issue of intent. Defendant alleges that such information was

excluded from the cut-and-paste document or from a lost audiotape of a phone conversation between him and Margritz.  The court agrees and finds the missing data creates doubt as to the trustworthiness of the document.  See, e.g., *Webster*, 84 F.3d at 1064 (government must show trustworthiness of tape recording).  Changes, additions, and deletions have clearly been made to this document, and accordingly, the court finds this document is not authentic as a matter of law.

Second, in the alternative, defendant argues that the cut-and-paste document is not admissible as it is not the best evidence.  This rule provides an original writing or recording to prove the truth of the contents.  Fed. R. Evid.1002.  A computer printout is considered the original if it accurately reflects the data.  Fed. R. Evid. 1001(3).  The same is true of a duplicate.  Fed. R. Evid. 1001(4), 1003.  As the court has previously stated, the cut-and-paste document offered by the government is not an accurate original or duplicate, because, as previously noted herein, it does not accurately reflect the entire conversations between the defendant and Margritz.  In addition, Margritz changed this document by including his editorial comments.  Unlike the cases relied on by the government in its brief, in the case before the court there is expert testimony that the cut-and-paste document has been altered.  Accordingly, for these same reasons the court likewise finds the cut-and-paste document inadmissible.  In that same regard, the court finds the document is inadmissible under Fed. R. Evid. 1004 (allows for the secondary evidence when original is destroyed).  See *United States v. Gerhart*, 538 F.2d 807, 809 (8th Cir. 1976).  It is clear that the proposed document does not accurately reflect the contents of the original.

The government relies heavily on *United States v. Tank*, 200 F.3d 627 (9th Cir. 2000) and *United States v. Simpson*, 152 F.3d 1241, 1249-50 (10th Cir. 1998) for the proposition

that chat room logs are admissible. The court finds the cases relied on by the government to be of little assistance. In both cases, it appears that the actual computer files were offered as evidence, not a cut-and-paste version of the computer files. The court would have no difficulty admitting evidence which had been saved on the computer and was the actual computer printout. The cut-and-paste document is not a computer record nor is it a computer printout.

The government also argues that Margritz can use the cut-and-paste document to refresh his memory at trial. If the court permitted Margritz to use this document to refresh his memory, then defendant would be forced to show how the information contained therein is unreliable. The court is very concerned that on cross-examination the defendant would be forced to have Margritz testify about the cut-and-paste document. That would cause the jurors to speculate that some part of an actual transcript exists. Allowing Margritz to use the document to refresh his memory would allow the government to present this evidence to the jury, albeit indirectly. See *Hall v. American Bakeries Co.*, 873 F.2d 1133, 1136 (8th Cir. 1989). Accordingly, the government will not be permitted to allow Margritz to refresh his memory with the cut-and-paste document.

The motion in limine is granted and the cut-and-paste document is excluded for all purposes.

### c.  Speedy trial

Defendant argues that his Fifth Amendment right to a speedy trial has been violated by the government's unreasonable delay. The court agrees.[5] The court has already

---

[5] The court makes this finding, knowing there is a possibility that a potential criminal has been permitted access into the community. However, the government must be accountable to the people it serves. This means that defendants have certain rights, as set forth in the Constitution, that must be adhered to in

determined that the errors in the purported transcript were significant. Defendant defends in part on the basis that he intended to introduce the online fourteen-year-old girl to his grandniece. In fact, he took his grandniece with him to the alleged rendezvous on August 14, 2001. Defendant did not stop and meet with the fourteen-year-old girl. Defendant is entitled to present this defense. In that regard, defendant alleges errors in the cut-and-paste document and he contends the missing evidence, either on the actual computer log or on the missing auditory tape, would contain exculpatory evidence. The government argues that none of the errors are exculpatory material. That begs the question. The government argues that even if the hard drive was available, it would be the same as the narrative. Again, that begs the question. No hard drive is available, and because of the delay in prosecuting Jackson, the government's electronic records have been erased, the first copy made by Margritz is missing, the audiotape is missing, and the defendant cannot verify the accuracy of Margritz's cut-and-paste job.

Based on the evidence submitted from the parties, the court finds that defendant suffered prejudice in this case. The court agrees with the defendant that the outcome of the case is greatly affected by the accuracy of the cut-and-paste notes collected by Margritz. The court has already concluded that this cut-and-paste document is not accurate. Margritz testified that he clicked and dragged all conversations from start to finish, copied and pasted the entire conversation into Microsoft Word, saved each

---

accordance with our system of justice. Our system of justice will suffer greatly, absent adherence to constitutional principles. First and foremost, an accused must be able to defend himself against the actual evidence of his guilt. In the case before the court, the alleged audiotape is missing; the government's computer is missing; the defendant's computer does not have any record of the conversations; no official transcripts of the conversations exist; the cut-and-paste document has questionable additions and deletions and missing information; and the government sat on this case for a significant period of time and permitted the evidence to disappear.

conversation chronologically, and then made a second copy which also included his personal notes and observations. The testimony of Peden is opposite to the scenario described by Margritz. The court has already determined that the testimony of Peden is credible. The first copy was destroyed during the upgrade to Margritz's computer. The only version before the court is the one that has the cut-and-paste jobs and the personal editorial comments by Margritz.

There is no doubt that the delay resulted in actual and substantial prejudice. *See United States v. Haskell*, 468 F.3d 1064, 1070 (8th Cir. 2006). *Jackson*, 446 F.3d at 849. However, the Eighth Circuit determined that defendant must also show that the "government intentionally delayed his indictment either to gain a tactical advantage or to harass him." *Id.* The court finds no direct evidence of intentional delay in this case, to the extent that intent is defined to mean the government consciously tried to delay. However, the fact that the file languished on the desk of Mr. Kokrda for two years is significant and very intentional. There was an intentional decision not to make this a priority case, not to preserve evidence, and not to prosecute this case. Testimony and evidence before the court now, which was not available or presented to the Eighth Circuit before oral argument, clearly show evidentiary issues with regard to the accuracy of Margritz's cut-and-paste document. The claims are not speculative. The Eighth Circuit found that "[t]his is especially the case in a prosecution such as this one, where nearly all of the evidence of the actual crime alleged has been memorialized in transcripts of the on-line chats between Jackson and the undercover agent." *Id.* at 852. The court finds that if the charges had been promptly and properly filed against the defendant, reliable evidence would likely have been available and not destroyed. In addition, an audiotape of a phone conversation is

apparently missing. To date, this recorded phone call tape has not been produced to the defendant. Further, the government concedes that "some of the offline messages are missing from the document. . . ." Filing No. 78, Gov't's Brief at 9. The court finds that this conduct by the government which caused the four-year delay was at the very least extremely reckless, to the point where it has caused defendant to be unable to adequately defend himself. The court finds this is sufficient to meet both the first and the second prongs of the Eighth Circuit's directive. See *Jackson*, 446 F.3d at 850, n.2, citing *United States v. $8,850*, 461 U.S. 555, 563 (1983). As the Eighth Circuit stated:

> Our holding should not be construed as our approval of the government's handling of this case. Nor should it in any way be construed as encouraging the government to "gamble with the interests of criminal suspects assigned a low prosecutorial priority." The government here failed the public's interest in the timely prosecution of a serious criminal offense, one that Congress created to protect children from on-line sexual predators.

*Jackson*, 446 F.3d at 852 (citations omitted). The court finds that defendant's motion to dismiss on the basis of prejudicial pre-indictment delay must be granted. Accordingly, the court finds the indictment should be dismissed under the Fifth Amendment.

THEREFORE, IT IS ORDERED that defendant's motion in limine, Filing No. 57, and his renewed oral motion to dismiss, Filing No. 73, are granted. The defendant's motion to clarify, Filing No. 82, is granted in part. The indictment in this case is dismissed.

DATED this 8th day of May, 2007.

BY THE COURT:

s/ Joseph F. Bataillon
CHIEF UNITED STATES DISTRICT JUDGE